UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ROSHELL BEATY, aka Roshell Clinton,
aka Angel Clinton, aka Angel Beaty,
MELVIN CLINTON,
DANIELLE BRANCH, aka Danielle Beaty,
CHRISTOPHER BATES,
BRIANNA RIMPSON, and
CHRISTOPHER BRANCH,

**INDICTMENT**

Defendants.
_______________________________________/

The Grand Jury charges:

At all times material to this Indictment:

1. Defendant ROSHELL BEATY, aka ROSHELL CLINTON, aka ANGEL CLINTON, aka ANGEL BEATY, ("BEATY") was a resident of Benton Harbor, Michigan.

2. Defendant MELVIN CLINTON, a son of BEATY, was a resident of Benton Harbor, Michigan.

3. Defendant DANIELLE BRANCH, aka DANIELLE BEATY, a daughter of BEATY, was a resident of Benton Harbor, Michigan.

4. Defendant CHRISTOPHER BATES was a resident of Benton Harbor, Michigan.

5. Defendant BRIANNA RIMPSON was a resident of Benton Harbor, Michigan.

6. Defendant CHRISTOPHER BRANCH, a son of BEATY, was an intermittent resident of Benton Harbor, Michigan until in or about December 2020, when he moved to the area of Atlanta, Georgia

7. Bank of America, Huntington National Bank, Flagstar Bank, JP Morgan Chase, KeyBank, Wells Fargo, The Bancorp Bank, Stride Bank, and Green Dot Bank and its associated brand banks GO2Bank and GoBank, were financial institutions that were insured by the Federal Deposit Insurance Corporation.

8. United Federal Credit Union, Delta Community Credit Union, and Honor Credit Union were financial institutions that were insured by the National Credit Union Administration.

## PANDEMIC UNEMPLOYMENT INSURANCE BENEFITS

9. Unemployment Insurance ("UI") is a joint state-federal program that is intended to provide temporary financial assistance to workers who are unemployed through no fault of their own. The federal UI trust fund finances the costs of administering unemployment insurance programs, loans made to state unemployment insurance funds, and fifty percent of extended benefits during periods of high unemployment. States can borrow from the federal fund if their own reserves are insufficient. Each state administers a separate UI program, through its state workforce agency ("SWA"), but all states follow the same guidelines established by federal law.

10. In March 2020, the United States was in the midst of the coronavirus ("Covid-19") pandemic, which resulted in the shutdown of numerous businesses and caused millions of American workers to be out of work. On March 12, 2020, the President declared a national emergency under Section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S. §§ 5121 et seq. ("Stafford Act"). On March 18, 2020, the President signed into law the Families First Coronavirus Response Act, which provided additional flexibility for SWAs and additional administrative funding to respond to the Covid-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. The CARES Act expanded the ability of the states to provide unemployment insurance for many

workers impacted by the Covid-19 pandemic. The CARES Act dedicated over $250 billion to give workers more access to UI benefits during the public health emergency.

11. The CARES Act expanded UI benefits during the pandemic by (1) making those benefits available for those who have not traditionally qualified, such as contractors, self-employed individuals, and gig workers, and (2) substantially increasing the amount of money paid to those who qualify for UI benefits.

12. As of April 18, 2020, the President had declared that a major disaster existed in all States and territories under Section 401 of the Stafford Act. On August 8, 2020, to further offset the pandemic's impact on American workers, the President authorized the Federal Emergency Management Agency ("FEMA") to expend up to $44 billion from the Disaster Relief Funds for wage payments. The President authorized the FEMA Administrator to provide grants to participating states, territories, and the District of Columbia to administer delivery of lost wages assistance ("LWA") to those receiving unemployment insurance benefits.

13. Each state determines its own weekly UI benefit amount for qualifying unemployed individuals. In the wake of the Covid-19 pandemic, several categories of federal UI benefits, collectively "pandemic UI benefits," supplemented each states' traditional UI benefit amounts, including:

a. Federal Pandemic Unemployment Compensation Program ("FPUC");

b. Pandemic Unemployment Assistance ("PUA");

c. Pandemic Emergency Unemployment Compensation ("PEUC"); and

d. Lost Wages Assistance ("LWA") program.

14. The LWA authorization allowed FEMA to provide an additional $300 per week to claimants who were eligible for at least $100 per week in UI benefits, beginning with the

unemployment week ending August 1, 2020, for a maximum of six weeks, *i.e.*, $1,800 per claimant.

15. In order to obtain any of the pandemic UI benefits, whether PUA, PEUC, FPUC, or LWA, an individual had to initiate a UI claim, *i.e.*, an application, with the SWA in their state of prior employment. Thereafter, the claimant had to regularly certify their ongoing eligibility for UI benefits. The overwhelming majority of claims/applications and certifications for pandemic UI benefits were filed electronically through the SWA's respective UI websites. In the application process, the claimant was required to enter personal information such as their name, date of birth, Social Security number, physical address, email address, and telephone number. A claimant also was required to answer a series of questions that enabled the SWA to determine their eligibility and UI benefit amount, including whether the Covid-19 pandemic had directly and adversely affected the claimant's employment. Once awarded pandemic UI benefits, the claimant was required to submit electronic certifications for each week of pandemic UI benefits they claimed.

16. SWAs in states throughout the country, including Michigan, Indiana, California, Illinois, and Arizona, accepted applications online that contained the claimant's email address, physical mailing address, and personally identifiable information ("PII") including the applicant's name, date of birth, and Social Security number.

17. SWAs had different ways of accepting claims/applications and certifications, and different manners of providing claimants with pandemic UI benefits.

a. <u>Michigan</u>: Michigan's SWA accepted UI applications and certifications online through a UI website hosted by one or more computer servers located in the Western District of Michigan. Once approved for pandemic UI benefits, Michigan's SWA paid them from a Chase Bank account by: (1) making a direct deposit into a checking or savings account at a financial

institution specified by the UI claimant; or (2) making a direct deposit into a dedicated account that was used solely for the purpose of receiving UI benefits deposits, for which the claimant was issued a UI debit card to use for purchases and/or withdrawals of their UI benefits. Prior to August 25, 2021, Bank of America maintained such bank accounts and issued corresponding "TIA" Mastercard debit cards. Bank of America mailed UI debit cards to the address specified by each UI claimant.

b. Indiana: Indiana's SWA accepted UI applications and certifications online through a UI website hosted by one or more computer servers located in Indiana. Once approved, Indiana's SWA paid pandemic UI benefits to claimants by: (1) making a direct deposit into a checking or savings account at a financial institution specified by the UI claimant; or (2) making a direct deposit into a dedicated bank account with KeyBank that was used solely for the purpose of receiving UI benefits deposits, for which the claimant was issued a "Key2Benefits" Mastercard debit card to use for purchases and/or withdrawals of their UI benefits. KeyBank mailed UI debit cards to the address specified by each UI claimant. To verify identities of certain UI claimants, Indiana's SWA used a third-party online identity-authentication service, "ID.me," with computer servers located in Virginia.

c. California: California's SWA accepted UI applications and certifications online through a UI website hosted by one or more computer servers located in California. Once approved, California's SWA paid pandemic UI benefits to claimants by making a direct deposit into a dedicated account with Bank of America that was used solely for the purpose of receiving UI benefits deposits, for which the claimant was issued a Visa "EDD" debit card to use for purchases and/or withdrawals of their UI benefits. Bank of America mailed UI debit cards to the address specified by each UI claimant. To verify identities of certain UI claimants, California's

SWA used a third-party online identity-authentication service, "ID.me," with computer servers located in Virginia.

d. Illinois: Illinois's SWA accepted applications and certifications online through a UI website hosted by computer servers located in either Illinois or Virginia. Once approved for pandemic UI benefits, Illinois's SWA paid them to claimants by: (1) making a direct deposit into a checking or savings account specified by the UI claimant; or (2) prior to December 27, 2021, making a direct deposit into a dedicated account with KeyBank that was used solely for the purpose of receiving UI benefits deposits, for which the claimant was issued a KeyBank debit card to use for purchases and/or withdrawals of their benefits. KeyBank mailed UI debit cards to the address specified by each UI claimant.

e. Arizona: Arizona's SWA accepted applications and certifications online through a UI website hosted by computer servers located in California. Once approved for pandemic UI benefits, Arizona's SWA paid them to claimants by: (1) making a direct deposit into a checking or savings account specified by the UI claimant; or (2) prior to September 23, 2021, making a direct deposit into a dedicated account with Bank of America that was used solely for the purpose of receiving UI benefits deposits, for which the claimant was issued an "EPC" debit card to use for purchases and/or withdrawals of their benefits. Bank of America mailed UI debit cards to the address specified by each UI claimant.

**COUNT 1**
**(Conspiracy to Commit Wire Fraud)**

18. Beginning in or about April 2020, and continuing to at least in or about December 2021, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

ROSHELL BEATY,
MELVIN CLINTON,
DANIELLE BRANCH,
CHRISTOPHER BATES,
BRIANNA RIMPSON, and
CHRISTOPHER BRANCH

knowingly combined, conspired, confederated, and agreed with each other and with other persons known and unknown to the Grand Jury to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, by means of wire communication in interstate commerce.

Overview of the Conspiracy

19. From in or about April 2020 and continuing to at least in or about December 2021, ROSHELL BEATY, CLINTON, DANIELLE BRANCH, BATES, RIMPSON, and CHRISTOPHER BRANCH, and others known and unknown to the Grand Jury (collectively "coconspirators") engaged in a scheme and artifice to defraud and to obtain money and property from SWAs by means of false and fraudulent pretenses, representations, and promises, by submitting falsified and fraudulent claims/applications and certifications for pandemic UI benefits in their own names and in the names of third parties, some of whom were victims of identity theft.

Object of the Conspiracy

20. The object of the conspiracy was for the defendants to unjustly enrich themselves by submitting false and fraudulent claims/applications and certifications to SWAs to collect pandemic UI benefits they were not entitled to receive.

Manner and Means

21. Among the manner and means by which the coconspirators carried out the conspiracy were the following:

22. Coconspirators submitted various types of false and fraudulent pandemic UI benefits claims, including (1) claims in their own names and PII to collect pandemic UI benefits from states where the coconspirators did not live or work, and (2) claims for pandemic UI benefits in the names of third parties, using the PII of those third parties, some of whom were victims of identity theft.

23. Coconspirators used the IP address associated with BEATY and CLINTON's residence, namely 71.201.191.51, as well as other IP addresses, to electronically submit false and fraudulent UI claims and certifications online to SWAs in multiple states including, but not limited to, Michigan, Illinois, Indiana, California, and Arizona, providing information they knew to be false that was material including, but not limited to:

a. false contact information, such as residential addresses, phone numbers, and email addresses, for the third parties whose names and PII were used for UI claims and certifications;

b. false statements respecting employment histories of the third parties whose names and PII were used for UI claims and certifications; and

c. false statements respecting the coconspirators' residential addresses and employment history or employment status, when their PII was used for UI claims and certifications.

24. Coconspirators obtained pandemic UI benefits, in some instances, by directing SWAs to mail debit cards containing UI benefits to mailing addresses accessible to the coconspirators and, in other instances, by directing SWAs to electronically deposit UI benefits into bank accounts the coconspirators controlled.

25. By submitting false and fraudulent claims and certifications online for UI benefits, coconspirators caused SWAs to, among other things:

a. transmit emails that were related to the fraudulent UI benefit claims to the email addresses provided by coconspirators;

b. authorize UI benefits to be provided to individuals who were ineligible for UI benefits for a variety of reasons, including that they were deceased, incarcerated, employed, or receiving UI benefits in another state;

c. cause financial institutions to mail UI debit cards, that is, debit cards linked to the UI debit accounts in the names of UI claimants, to mailing addresses provided by coconspirators.

d. cause financial institutions to deposit pandemic UI benefits into accounts, controlled by the coconspirators, at financial institutions including Bank of America, United Federal Credit Union, Huntington National Bank, Delta Community Credit Union, Honor Credit Union, Flagstar Bank, JP Morgan Chase, KeyBank, Wells Fargo, The Bancorp Bank, Stride Bank, and Green Dot Bank and its associated brand banks GO2Bank and GoBank.

26. Coconspirators submitted at least 98 false and fraudulent claims and related certifications for pandemic UI benefits to SWAs in multiple states under the names and PII of at least 61 different individuals, including the coconspirators' own names and PII and the names and PII of third parties, for which SWAs paid out more than $764,194 in UI benefits.

***Fraudulent UI Claims in Coconspirators' Own Names and PII***

27. BEATY, CLINTON, DANIELLE BRANCH, BATES, RIMPSON, and CHRISTOPHER BRANCH used their own names and PII to obtain or attempt to obtain fraudulent pandemic UI benefits from multiple states, including, but not limited to:

28. Defendant BEATY used IP address 71.201.191.51 to file with Michigan's SWA electronic claims and certifications for pandemic UI benefits in her own name and PII. In response to those claims and certifications, Michigan's SWA paid BEATY $18,240 in pandemic UI benefits for the 39 weeks of unemployment identified below, which were deposited into the bank account identified below. While BEATY was receiving pandemic UI benefits from Michigan, she applied for pandemic UI benefits from the states of Indiana and Illinois on or about the dates listed below, based on false and fraudulent statements about her residential address, employment history, and existing UI benefits. Indiana's and Illinois's SWAs denied BEATY's UI claims.

| ROSHELL BEATY FRAUDULENT UI BENEFITS | | | | | | |
|---|---|---|---|---|---|---|
| State | Initial Claim Filed Date | IP Address for Claim or Certification | Residential Street in Initial Claim | UI Benefits Paid for Weeks Ending | Total UI Benefits Paid | Financial Institution and Last Four Digits of Account Number |
| MI | 4/27/2020 | 71.201.191.51 | E. May St., Benton Harbor, MI | March 21, 2020– December 12, 2020 | $18,240 | Green Dot (2305) |
| IN | 12/4/2020 | 71.201.191.51 | Lancashire Ct Indianapolis, IN | n/a | n/a | n/a |
| IL | 12/13/2020 | n/a | E. 85th St. Chicago, IL | n/a | n/a | n/a |

29. Defendant CLINTON, aided and abetted by coconspirator BEATY, used IP address 71.201.191.51 to electronically file with Michigan's SWA claims and certifications for pandemic

UI benefits. Michigan's SWA approved CLINTON's UI claim. While CLINTON was receiving pandemic UI benefits from Michigan, on or about the dates listed below he applied for and obtained pandemic UI benefits from the states of California, Indiana, and Arizona, using his own name and PII, based on false and fraudulent statements about his residential address, employment history, and existing UI benefits. In total, for the unemployment weeks identified below, CLINTON obtained pandemic UI benefits in the approximate amounts listed below from SWAs in the identified states. With respect to Arizona, CLINTON applied for and was provided $10,038 in benefits, which was deposited into CLINTON's United Federal Credit Union ("UFCU") account ending in 0104; this deposit was flagged by UFCU as fraudulent and was subsequently returned to Arizona's SWA.

| MELVIN CLINTON FRAUDULENT UI BENEFITS | | | | | | |
|---|---|---|---|---|---|---|
| State | Initial Claim Filed Date | IP Address for Claim or Certification | Residential Street in Initial Claim | UI Benefits Paid for Weeks Ending | Total UI Benefits Paid | Financial Institution and Last Four Digits of Account Number |
| MI | 4/27/2020 | 71.201.191.51 | E. May St., Benton Harbor, MI | March 21, 2020 – April 17, 2021 | $16,160 | United Federal Credit Union (0104) |
| | | | | | $2,080 | Flagstar Bank (9425) |
| | | | | | $7,680 | Green Dot (4533) |
| CA | 8/22/2020 | 71.201.191.51 | Maplewood Ave., Los Angeles, CA | April 18, 2020– August 8, 2020 | $16,938 | Bank of America (6917) |
| IN | 12/2/2020 | 71.201.191.51 | Royal Vista Ter South Bend, IN | April 4, 2020– June 19, 2021 | $23,948 | Huntington Bank (5412) |
| | | | | | $4,939 | Green Dot Bank (7575) |
| AZ | 7/9/2020 | 71.201.191.51 | N. 84th Ave Phoenix, AZ | April 4, 2020– August 22, 2022 | $10,038 (returned) | United Federal Credit Union (0104) |

30. Defendant DANIELLE BRANCH, aided and abetted by coconspirator BEATY, used IP address 71.201.191.51 to electronically file with Michigan's SWA claims and certifications for pandemic UI benefits. Michigan's SWA approved DANIELLE BRANCH's UI claim. While DANIELLE BRANCH was receiving pandemic UI benefits from Michigan, on or about the dates below she applied for and obtained pandemic UI benefits from the states of California and Indiana, using her own name and PII, based on false and fraudulent statements

about her residential address, employment history, and existing UI benefits. In total, for the unemployment weeks identified below, DANIELLE BRANCH obtained pandemic UI benefits in the approximate amounts listed below from SWAs in the identified states.

| DANIELLE BRANCH FRAUDULENT UI BENEFITS | | | | | | |
|---|---|---|---|---|---|---|
| State | Initial Claim Filed Date | IP Address for Claim or Certification | Residential Street in Initial Claim | UI Benefits Paid for Weeks Ending | Total UI Benefits Paid | Financial Institution and Last Four Digits of Account Number |
| MI | 5/3/2020 | 71.201.191.51 | Britain Ave., Benton Harbor, MI | March 14, 2020 –July 17, 2021 | $20,907 | Honor Credit Union (2001) |
| | | | | | $9,660 | Bank of America (4309) |
| CA | 8/15/2020 | 71.201.191.51 | W. 76th St., Los Angeles, CA | April 4, 2020–August 2020 | $17,700 | Bank of America (0577) |
| IN | 12/4/2020 | 71.201.191.51 | Royal Vista Ter, South Bend, IN | May 2, 2020–May 15, 2021 | $21,665 | Green Dot Bank (7311) |

31. Defendant CHRISTOPHER BATES, aided and abetted by coconspirator BEATY, used IP address 71.201.191.51 to electronically file with Michigan's SWA claims and certifications for pandemic UI benefits. Michigan's SWA approved BATES's UI claim. While BATES was receiving pandemic UI benefits from Michigan, he used IP address 71.201.191.51 to login to Indiana's SWA website, specifically into a fraudulent UI account in his name and PII; BATES used a different IP address, namely 174.255.192.33, and the same fraudulent UI account with Indiana's SWA, to file a false and fraudulent application for pandemic UI benefits from Indiana, while he was receiving pandemic UI benefits from Michigan. Also while receiving pandemic UI benefits from Michigan, Bates applied for UI benefits from Illinois. Both out-of-state applications were based on false and fraudulent statements about BATES's residential address, employment history, and existing UI benefits. In total, for the unemployment weeks identified below, BATES obtained pandemic UI benefits in the approximate amounts listed below from SWAs in the identified states.

| CHRISTOPHER BATES FRAUDULENT UI BENEFITS | | | | | | |
|---|---|---|---|---|---|---|
| State | Initial Claim Filed Date | IP Address for Claim or Certification | Residential Street in Initial Claim | UI Benefits Paid for Weeks Ending | Total UI Benefits Paid | Financial Institution and Last Four Digits of Account Number |
| MI | 4/27/2020 | 71.201.191.51 | Union Ave., Benton Harbor, MI | March 21, 2020–August 28, 2021 | $34,040 | Bank of America (5777) |
| IN | 6/22/2020 | 174.255.192.33<br>71.201.191.51 | Roosevelt St., South Bend, IN | March 15, 2020–September 4, 2021 | $24,695 | JP Morgan Chase (0399) |
| | | | | | $8,082 | Huntington Bank (4078) |
| | | | | | $449 | JP Morgan Chase (1773) |
| IL | 11/29/2020 | undetermined | N. Morgan St., Chicago, IL | July 26, 2020–March 27, 2021 | $25,896 | JP Morgan Chase (0399) |

32. Defendant BRIANNA RIMPSON, aided and abetted by coconspirator BEATY, used IP address 71.201.191.51 to electronically file with Michigan's SWA claims and certifications for pandemic UI benefits. Michigan's SWA approved RIMPSON's UI claim. While RIMPSON was receiving pandemic UI benefits from Michigan, on or about the dates below she applied for and obtained fraudulent pandemic UI benefits from Indiana, using her own name and PII, based on false and fraudulent statements about her residential address, employment history, and existing UI benefits. Also while RIMPSON was receiving benefits from Michigan, she applied for pandemic UI benefits from Illinois, using the name "Brianna Simpson" and her actual birth date and Social Security number, based on false and fraudulent statements about her residential address, employment history, and UI benefits. Illinois's SWA denied the claim. In total, for the unemployment weeks identified below, RIMPSON obtained pandemic UI benefits in the approximate amounts listed below from SWAs in the identified states.

| BRIANNA RIMPSON FRAUDULENT UI BENEFITS | | | | | | |
|---|---|---|---|---|---|---|
| State | Initial Claim Filed Date | IP Address of Initial Claim | Residential Street in Initial Claim | UI Benefits Paid for Weeks Ending | Total UI Benefits Paid | Financial Institution Account Number Ending |
| MI | 12/25/2020 | 71.201.191.51 | Union Ave., Benton Harbor, MI | September 19, 2020 –August 28, 2021 | $28,600 | Bank of America (6256) |
| IN | 12/2/2020 | 71.201.191.51 | Royal Vista Ter, South Bend, IN | March 28, 2020–June 19, 2021 | $27,385 | Green Dot (1125) |
| IL | 12/25/2020 | undetermined | N Hamilton Ave Chicago, IL | n/a | n/a | n/a |

33. Defendant CHISTOPHER BRANCH, aided and abetted by BEATY, used IP address 71.201.191.51, on or about April 12, 2020, to electronically file with Michigan's SWA claims and certifications for pandemic UI benefits. Michigan's SWA approved his UI claim. While CHRISTOPHER BRANCH was receiving pandemic UI benefits from Michigan under his own name, PII, and a residential address on E. May Street in Benton Harbor, he moved to Atlanta, Georgia, in or about December 2020. On or about January 4, 2021, CHRISTOPHER BRANCH began working full time for an employer in Atlanta, Georgia, earning an annual salary of approximately $36,401. Between on or about January 4, 2021 and on or about April 10, 2021, CHRISTOPHER BRANCH electronically filed with Michigan's SWA 11 false and fraudulent certifications to continue receiving pandemic UI benefits he was not entitled to receive on account of his full-time employment. In each of the certifications, CHRISTOPHER BRANCH falsely and fraudulently answered "No" to the question, "Did you have any earnings, even if you have not been paid, [during the one-week certification period]?" As a result of his false and fraudulent certifications, CHRISTOPHER BRANCH fraudulently obtained approximately $5,060 in pandemic UI benefits from Michigan's SWA.

***Fraudulent UI Claims in Names of Third Parties and Identity Theft Victims***

34. Using a variety of manner and means, defendant BEATY obtained and stored the PII of third parties, some of whom were victims of identity theft, which BEATY used to submit false and fraudulent claims to state SWAs for pandemic UI benefits. For example, BEATY obtained the PII of identity-theft victim V.H. from an email CHRISTOPHER BRANCH sent to BEATY on June 8, 2016, containing an image of a fabricated Michigan driver's license bearing BEATY's photograph and the name and date of birth of V.H., which email was stored on BEATY's cell phone. Further, BEATY stored on her cell phone the PII of the following third

parties: A.B., D.G.B., P.G., G.H., W.H., E.D.H., E.L.H. V.H., R.H., S.J., J.M., J.L., D.P., B.S., J.T., and N.Y.

35. One or more coconspirators, including defendant BEATY, used the names and PII of third parties to electronically file, or assist third parties in electronically filing, false and fraudulent claims and certifications for pandemic UI benefits with multiple state SWAs, using IP address 71.201.191.51. Coconspirators, including defendant BEATY, assumed the identities of third parties, purported to be those third parties, and provided materially false information on the electronic UI claims and certifications, including false statements about the third parties' employment histories and residential addresses.

36. One or more coconspirators, including defendant BEATY, used false and fabricated forms of identification to support claims for pandemic UI benefits in the names of third parties, which were uploaded to the Michigan SWA's website using IP address 71.201.191.51. For example, on July 15, 2020, a fabricated Michigan driver's license bearing a picture of defendant CHRISTOPHER BRANCH and the PII of P.G. was electronically uploaded in support of an application for pandemic UI benefits in the name of P.G. Additionally, fabricated identification documents bearing the PII of third parties J.H., D.D., and M.D. were electronically uploaded in support of fraudulent claims for pandemic UI benefits.

37. One or more coconspirators, including defendant BEATY, used false and fabricated employment records to support claims for pandemic UI benefits in the names of third parties, which they uploaded to Michigan's online UI website using IP address 71.201.191.51. For example, on July 27, 2020, a fabricated "2019 Summary report" from Lyft for purported employee P.G. was electronically uploaded in support of a fraudulent claim for pandemic UI benefits in the name of P.G. Additionally, fabricated employment documents bearing the PII of E.L.H. and

deceased individual E.J.C. were electronically uploaded in support of fraudulent claims for pandemic UI benefits.

38. Between March 2020 and April 2021, one or more coconspirators, including defendant BEATY, used IP address 71.201.191.51 to electronically file false and fraudulent pandemic UI benefits claims and certifications with SWAs in the states listed below, using the identities of the following third parties, resulting in the payment of pandemic UI benefits by state SWAs in the total approximate amounts listed below, which were deposited into accounts in the names of those third parties at the respective financial institutions identified below.

| Third Party | State | Initial Claim Filed Date | UI Benefits Paid | Financial Institution |
|---|---|---|---|---|
| A.B. | California | 8/9/2020 | $12,606 | Bank of America |
| D.G.B. | Michigan | 6/9/2020 | $12,920 | Bank of America |
| D.F.B. | California | 8/18/2020 | $14,880 | Bank of America |
| M.B. | Michigan | 4/28/2020 | $7,240 | Bank of America |
| | | | $11,320 | GO2 Bank/Green Dot |
| J.B. | California | 8/9/2020 | n/a | n/a |
| D.J.B. | Michigan | 6/22/2020 | n/a | n/a |
| D.D.B. | California | 8/18/2020 | $19,200 | Bank of America |
| J.B. | California | 8/31/2020 | n/a | n/a |
| L.B. | California | 8/31/2020 | n/a | n/a |
| K.B. | Michigan | 8/2/2020 | n/a | n/a |
| J.C. | Michigan | 7/13/2020 | n/a | n/a |
| E.C. | Michigan | 12/1/2020 | n/a | n/a |
| J.C. | Michigan | 12/1/2020 | $8,520 | Bank of America |
| J.C. | California | 8/17/2020 | n/a | n/a |
| D.C. | Michigan | 5/22/2020 | $ 7,920 | Bank of America |
| J.D. | Michigan | 5/20/2020 | n/a | n/a |
| M.D. | Michigan | 6/13/2020 | $10,040 | Bank of America |
| M.D. | Michigan | 5/21/2020 | n/a | n/a |
| J.D. | California | 8/9/2020 | $14,886 | Bank of America |
| D.D. | Michigan | 7/6/2020 | $12,160 | Stride Bank |
| K.F. | California | 8/31/2020 | n/a | N/A |
| P.G. | Michigan | 5/10/2020 | $1,520.0 | Bank of America |
| P.G. | California | 8/13/2020 | $16,188 | Bank of America |
| P.G. | Indiana | 11/30/2020 | n/a | n/a |
| K.G. | Michigan | 6/22/2020 | n/a | n/a |
| K.G. | Arizona | 7/9/2020 | $10,038 | Bank of America |
| V.H. | Michigan | 5/9/2020 | $13,400 | GO2 Bank/Green Dot |
| R.H. | Michigan | 7/11/2020 | n/a | n/a |
| G.H. | Michigan | 5/16/2020 | $13,400 | Bank of America |
| A.H. | California | 8/18/2020 | $17,700 | Bank of America |

| Third Party | State | Initial Claim Filed Date | UI Benefits Paid | Financial Institution |
|---|---|---|---|---|
| J.H. | California | 8/15/2020 | $16,020 | Bank of America |
| J.H. | Michigan | 5/7/2020 | $13,080 | Bank of America |
| T.H. | Michigan | 6/18/2020 | n/a | n/a |
| I.H. | Michigan | 7/8/2020 | n/a | n/a |
| W.H. | Michigan | 5/1/2020 | $10,640 | GO2 Bank/Green Dot |
| E.D.H. | Arizona | 9/10/2020 | n/a | n/a |
| E.D.H. | Michigan | 5/21/2020 | $5,800 | Bank of America |
| E.L.H. | California | 8/18/2020 | n/a | n/a |
| E.L.H. | California | 9/10/2020 | n/a | n/a |
| E.L.H. | Michigan | 7/7/2020 | $ 760 | Bank of America |
| A.J. | Arizona | 7/9/2020 | $ 15,042 | Bank of America |
| A.J. | Indiana | 7/8/2020 | n/a | n/a |
| A.J. | Nevada | 7/18/2020 | n/a | n/a |
| S.J. | California | 8/31/2020 | n/a | n/a |
| S.J. | Michigan | 4/29/2020 | $1,520 | Chime |
| T.J. | California | 8/17/2020 | n/a | n/a |
| Z.J. | Michigan | 5/20/2020 | n/a | n/a |
| K.L. | California | 8/15/2020 | $19,200 | Bank of America |
| J.L. | Michigan | 5/21/2020 | $2,280 | Bank of America |
| J.M. | California | 8/14/2020 | $16,008 | Bank of America |
| M.M. | Arizona | 7/9/2020 | n/a | n/a |
| N.M. | Michigan | 5/22/2020 | n/a | n/a |
| D.N. | California | 8/31/2020 | n/a | n/a |
| D.N. | Michigan | 5/3/2020 | $13,560 | Bank of America |
| D.N. | Indiana | | n/a | n/a |
| J.N. | Michigan | 7/6/2020 | $9,880 | Wells Fargo |
| S.P. | California | 9/2/2020 | n/a | n/a |
| D.P. | Arizona | 7/10/2020 | n/a | n/a |
| D.P. | Michigan | 4/28/2020 | $15,200 | Chime |
| | | | $3,680 | Green Dot |
| | | | $3,360 | Bank of America |
| D.P. | California | 8/17/2020 | $ 29,100 | Bank of America |
| D.P. | Indiana | 4/7/2021 | $8,229 | GoBank/Green Dot |
| D.R. | California | 8/6/2020 | n/a | n/a |
| R.R. | California | 8/31/2020 | n/a | n/a |
| J.C.S. | Michigan | 6/29/2020 | n/a | n/a |
| C.S. | Michigan | 8/31/2020 | n/a | n/a |
| K.S. | California | 8/6/2020 | n/a | n/a |
| B.S. | California | 8/19/2020 | $ 17,700 | Bank of America |
| C.S. | California | 8/27/2020 | n/a | n/a |
| J.S. | California | 8/17/2020 | n/a | n/a |
| A.T. | Michigan | 5/21/2020 | $ 7,920 | Bank of America |
| J.T. | Michigan | 4/29/2020 | $ 12,480 | Green Dot |
| Q.W. | California | 8/31/2020 | n/a | n/a |
| N.Y. | Arizona | 6/25/2020 | $ 14,625 | Bank of America |
| J.Y. | Michigan | 6/26/2020 | n/a | n/a |

39. After the respective state SWAs approved the fraudulent pandemic UI benefits claims and certifications and disbursed pandemic UI benefits to checking and savings accounts in the names of third parties, defendants BEATY and CHRISTOPHER BRANCH assumed the identities of certain third-party UI claimants and used the corresponding UI debit cards in the names of those third parties to make fraudulent cash withdrawals of pandemic UI benefits, knowing that they were not entitled to those funds, from ATMs, including ATMs in Benton Harbor, Michigan, Michigan City, Indiana, and Chicago, Illinois.

18 U.S.C. § 1349
18 U.S.C. § 1343

**COUNTS 2 THROUGH 29**
**(Wire Fraud)**

40. Paragraphs 1 through 39 of this Indictment are realleged and incorporated by reference in these Counts, as if fully set forth herein.

41. On or about the dates listed in Column C, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere, the defendants identified in Column B, aiding and abetting each other, and having knowingly devised a scheme or artifice to defraud to obtain money by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, transmitted and caused to be transmitted by means of wire communication in interstate commerce the writings, signs, and signals, set forth in column D, below, each of which constituted an execution of the fraudulent scheme:

| A<br>Count | B<br>Defendant(s) | C<br>Date | D<br>Transmission |
|---|---|---|---|
| 2 | ROSHELL BEATY | 6/23/2020 | Electronic transmission of false and fraudulent registration for pandemic UI benefits in the name and PII of N.Y., from IP address 71.201.191.51 to Arizona's SWA |
| 3 | ROSHELL BEATY | 7/8/2020 | Electronic transmission of false and fraudulent application for pandemic UI benefits in the name and PII of A.J., from IP address 71.201.191.51 to Indiana's SWA |
| 4 | ROSHELL BEATY<br>CHRISTOPHER BATES | 7/8/2020 | Electronic transmission of false and fraudulent weekly certification for pandemic UI benefits for claimant CHRISTOPHER BATES for the week ending March 28, 2020, from IP address 71.201.191.51 to Indiana's SWA |
| 5 | ROSHELL BEATY<br>CHRISTOPHER BATES | 7/8/2020 | Electronic transmission of false and fraudulent weekly certification for pandemic UI benefits for claimant CHRISTOPHER BATES for the week ending April 25, 2020, from IP address 71.201.191.51 to Indiana's SWA |

| A<br>Count | B<br>Defendant(s) | C<br>Date | D<br>Transmission |
|---|---|---|---|
| 6 | ROSHELL BEATY<br>CHRISTOPHER BATES | 7/8/2020 | Electronic transmission of false and fraudulent weekly certification for pandemic UI benefits for claimant CHRISTOPHER BATES for the week ending May 9, 2020, from IP address 71.201.191.51 to Indiana's SWA |
| 7 | ROSHELL BEATY<br>CHRISTOPHER BATES | 7/8/2020 | Electronic transmission of false and fraudulent weekly certification for pandemic UI benefits for claimant CHRISTOPHER BATES for the week ending July 4, 2020, from IP address 71.201.191.51 to Indiana's SWA |
| 8 | ROSHELL BEATY | 7/9/2020 | Electronic transmission of false and fraudulent registration for pandemic UI benefits in name and PII of K.G., from IP address 71.201.191.51 to Arizona's SWA |
| 9 | ROSHELL BEATY<br>MELVIN CLINTON | 7/9/2020 | Electronic transmission of false and fraudulent registration for pandemic UI benefits in the name and PII of MELVIN CLINTON, from IP address 71.201.191.51 to Arizona's SWA |
| 10 | ROSHELL BEATY | 8/6/2020 | Electronic transmission of false and fraudulent application for pandemic UI benefits in name of D.R. and the PII of J.Y., from IP address 71.201.191.51 to California's SWA |
| 11 | ROSHELL BEATY | 8/14/2020 | Electronic transmission of false and fraudulent application for pandemic UI benefits in name and PII of P.G., from IP address 71.201.191.51 to California's SWA |
| 12 | ROSHELL BEATY | 8/15/2020 | Electronic transmission of false and fraudulent pandemic UI benefits application in name and PII of K.L., from IP address 71.201.191.51 to California's SWA |
| 13 | ROSHELL BEATY<br>CHRISTOPHER BRANCH | 8/15/2020 | Electronic transmission of false and fraudulent pandemic UI benefits application in the name and PII of J.H., from IP address 71.201.191.51 to California's SWA |

| | | | |
|---|---|---|---|
| 14 | ROSHELL BEATY<br>DANIELLE BRANCH | 8/15/2020 | Electronic transmission of false and fraudulent pandemic UI benefits application in the name and PII of DANIELLE BRANCH, from IP address 71.201.191.51 to California's SWA |
| 15 | ROSHELL BEATY | 8/17/2020 | Electronic transmission of false and fraudulent pandemic UI benefits application in the name and PII of D.P. from IP address 71.201.191.51 to California's SWA |
| 16 | ROSHELL BEATY | 8/18/2020 | Electronic transmission of false and fraudulent pandemic UI benefits application in the name and PII of E.L.H., from IP address 71.201.191.51 to California's SWA |
| 17 | ROSHELL BEATY<br>MELVIN CLINTON | 8/22/2020 | Electronic transmission of false and fraudulent pandemic UI benefits application in the name and PII of MELVIN CLINTON, from IP address 71.201.191.51 to California's SWA |
| 18 | ROSHELL BEATY<br>MELVIN CLINTON | 12/3/2020 | Electronic transmission of false and fraudulent pandemic UI benefits application in the name and PII of MELVIN CLINTON, from IP address 71.201.191.51 to Indiana's SWA |
| 19 | ROSHELL BEATY<br>BRIANNA RIMPSON | 12/4/2020 | Electronic transmission of false and fraudulent pandemic UI benefits application in BRIANNA RIMPSON's name and PII, from IP address 71.201.191.51 to Indiana's SWA |
| 20 | ROSHELL BEATY | 12/4/2020 | Electronic transmission of false and fraudulent UI benefits initial claim in BEATY's name and PII, from IP address 71.201.191.51 to Indiana's SWA |
| 21 | ROSHELL BEATY<br>DANIELLE BRANCH | 12/4/2020 | Electronic transmission of false and fraudulent UI benefits initial claim in DANIELLE BRANCH's name and PII, from IP address 71.201.191.51 to Indiana's SWA |
| 22 | ROSHELL BEATY<br>CHRISTOPHER BATES | 12/7/2020 | Electronic transmission from IP address 71.201.191.51 to Indiana's SWA to log in to UI account for claimant CHRISTOPHER BATES |

| | | | |
|---|---|---|---|
| 23 | ROSHELL BEATY<br>BRIANNA RIMPSON | 12/8/2020 | Electronic transmission of false and fraudulent weekly certification for pandemic UI benefits for claimant BRIANNA RIMPSON for the week ending March 28, 2020, from IP address 71.201.191.51 to Indiana's SWA |
| 24 | ROSHELL BEATY<br>BRIANNA RIMPSON | 12/8/2020 | Electronic transmission of false and fraudulent weekly certification for pandemic UI benefits for claimant BRIANNA RIMPSON for the week ending April 11, 2020, from IP address 71.201.191.51 to Indiana's SWA |
| 25 | ROSHELL BEATY<br>BRIANNA RIMPSON | 12/8/2020 | Electronic transmission of false and fraudulent weekly certification for pandemic UI benefits for claimant BRIANNA RIMPSON for the week ending April 25, 2020, from IP address 71.201.191.51 to Indiana's SWA |
| 26 | ROSHELL BEATY<br>DANIELLE BRANCH | 12/9/2020 | Electronic transmission of false and fraudulent weekly certification for pandemic UI benefits for claimant DANIELLE BRANCH for the week ending May 2, 2020, from IP address 71.201.191.51 to Indiana's SWA |
| 27 | ROSHELL BEATY<br>MELVIN CLINTON | 2/2/2021 | Electronic transmission of selfie photograph of MELVIN CLINTON and photographs of CLINTON's identity documents, from IP address 71.201.191.51 to ID.me |
| 28 | ROSHELL BEATY<br>BRIANNA RIMPSON | 2/26/2021 | Electronic transmission of false and fraudulent weekly certification for pandemic UI benefits for claimant BRIANNA RIMPSON for the week ending December 12, 2020, from IP address 71.201.191.51 to Indiana's SWA |
| 29 | ROSHELL BEATY<br>BRIANNA RIMPSON | 5/2/2021 | Electronic transmission of false and fraudulent weekly certification for pandemic UI benefits for claimant BRIANNA RIMPSON for the week ending May 1, 2021, from IP address 71.201.191.51 to Indiana's SWA |

18 U.S.C. § 1343
18 U.S.C. § 2

**COUNTS 30 THROUGH 35**
**(Financial Institution Fraud)**

42. Paragraphs 1 through 41 of this Indictment are realleged and incorporated by reference in these Counts, as if fully set forth herein.

43. On or about the dates listed in Column C, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

ROSHELL BEATY,

having knowingly executed and attempted to execute a scheme or artifice to obtain any of the moneys and funds under the custody or control of a financial institution by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, committed and caused to be committed the acts identified in Column C, each of which constituted an execution of the fraudulent scheme.

| A<br>Count | B<br>Date | C<br>Act |
|---|---|---|
| 30 | 7/19/2020 | Falsely and fraudulently purporting to be individual D.N. while using Michigan UI debit card ending in 6077, issued to D.N, to withdraw $500 at a United Federal Credit Union ATM in Benton Harbor, Michigan |
| 31 | 7/24/2020 | Falsely and fraudulently purporting to be individual R.H. while using Michigan UI debit card ending in 3610, issued to R.H., to withdraw $500 at a Bank of America ATM in Benton Harbor, Michigan |
| 32 | 7/24/2020 | Falsely and fraudulently purporting to be individual J.C. while using Michigan UI debit card ending in 3174, issued to J.C., to conduct a balance inquiry at a Bank of America ATM in Benton Harbor, Michigan |
| 33 | 7/24/2020 | Falsely and fraudulently purporting to be individual D.C. while using Michigan UI debit card ending in 2369, issued to D.C, to conduct a balance inquiry at a Bank of America ATM in Benton Harbor, Michigan |
| 34 | 7/24/2020 | Falsely and fraudulently purporting to be individual A.T. while using Michigan UI debit card ending in 1960, issued to A.T., to conduct a balance inquiry at a Bank of America ATM in Benton Harbor, Michigan |
| 35 | 7/24/2020 | Falsely and fraudulently purporting to be individual D.B. while using Michigan UI debit card ending in 7534, issued to D.B., to conduct a balance inquiry at a Bank of America ATM in Benton Harbor, Michigan |

18 U.S.C. § 1344

**COUNTS 36 THROUGH 42**
**(Aggravated Identity Theft)**

44. Paragraphs 1 through 41 of this Indictment are realleged and incorporated by reference in these Counts, as if fully set forth herein.

45. Between on or about the dates identified in Column B, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

ROSHELL BEATY,

during and in relation to the felony of conspiracy to commit wire fraud charged in Count One of this Indictment, which is incorporated as if alleged herein, knowingly transferred, possessed, and used, without lawful authority, the means of identification of other persons, namely, the means of identification described in Column C belonging to the other persons identified in Column D, knowing that those means of identification belonged to other actual persons.

| A<br>Count | B<br>Date Range | C<br>Means of ID | D<br>Other Person |
|---|---|---|---|
| 36 | 5/21/2020 – 3/12/2021 | name, date of birth, Social Security number | D.C. |
| 37 | 5/16/2020 – 9/15/2020 | name, date of birth, Social Security number | G.H. |
| 38 | 7/7/2020 – 12/1/2020 | name, date of birth, Social Security number | E.L.H. |
| 39 | 8/15/2020 – 9/24/2020 | name, date of birth | K.L. |
| 40 | 8/19/2020 – 9/21/2020 | name, date of birth, Social Security number | B.S. |
| 41 | 4/30/2020 – 12/15/2020 | name, date of birth, Social Security number | W.H. |
| 42 | 6/26/2020-03/12/2021 | Social Security number | J.Y. |

18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1028A(b)(2)
18 U.S.C. § 1028A(c)(5)

## COUNTS 43 THROUGH 44
**(Aggravated Identity Theft)**

46. Paragraphs 1 through 41 of this Indictment are realleged and incorporated by reference in this Count, as if fully set forth herein.

47. Between on or about the dates identified in Column B, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

ROSHELL BEATY and
CHRISTOPHER BRANCH,

aiding and abetting each other during and in relation to the felony of conspiracy to commit wire fraud charged in Count One of this Indictment, which is incorporated as if alleged herein, knowingly transferred, possessed, and used, without lawful authority, the means of identification of other persons, namely, the means of identification described in Column C belonging to the other persons identified in Column D, knowing that those means of identification belonged to other actual persons.

| A<br>Count | B<br>Date Range | C<br>Means of ID | D<br>Other Person |
|---|---|---|---|
| 43 | 5/7/2020 – 12/23/2020 | name, date of birth, Social Security number | J.H. |
| 44 | 5/10/2020 – 11/30/2020 | name, date of birth, Social Security number | P.G. |

18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1028A(b)(2)
18 U.S.C. § 1028A(c)(5)
18 U.S.C. § 2

**COUNT 45**
**(Fraud in Connection with Emergency Benefits)**

48. Paragraphs 1 through 41 of this Indictment are realleged and incorporated by reference in this Count, as if fully set forth herein.

49. Between on or about August 8, 2020 and on or about September 17, 2020, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

ROSHELL BEATY

knowingly concealed and covered up by means of a scheme or device a material fact, which fact BEATY knew was material, specifically BEATY concealed and covered up from Michigan's SWA the fact that she was not individual M.B., in whose name and PII BEATY submitted false and fraudulent certifications to Michigan's SWA for pandemic UI benefits, and this concealment and covering up of a material fact by scheme or device was done in a matter involving a benefit authorized, transmitted, transferred, disbursed, and paid by the United States or of any department or agency thereof in connection with a major disaster declaration under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5170), namely Lost Wages Assistance program benefits that were authorized, paid, and disbursed in connection with the Covid-19 pandemic, an emergency declaration under section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5191).

18 U.S.C. § 1040(a)(1)

**COUNT 46**
**(Fraud in Connection with Emergency Benefits)**

50. Paragraphs 1 through 41 of this Indictment are realleged and incorporated by reference in this Count, as if fully set forth herein.

51. On or about December 4, 2020, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

MELVIN CLINTON

knowingly concealed and covered up by means of a scheme or device a material fact, which fact CLINTON knew was material, specifically CLINTON concealed and covered up from Indiana's SWA the fact that, at that time, CLINTON was simultaneously receiving pandemic UI benefits from Michigan's SWA, and this concealment and covering up of a material fact by scheme or device was done in a matter involving a benefit authorized, transmitted, transferred, disbursed, and paid by the United States or of any department or agency thereof in connection with a major disaster declaration under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5170), namely Lost Wages Assistance program benefits that were authorized, paid, and disbursed in connection with the Covid-19 pandemic, an emergency declaration under section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5191).

18 U.S.C. § 1040(a)(1)

**COUNT 47**
**(Fraud in Connection with Emergency Benefits)**

52. Paragraphs 1 through 41 of this Indictment are realleged and incorporated by reference in this Count, as if fully set forth herein.

53. Between on or about August 15, 2020 and on or about October 14, 2020, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

DANIELLE BRANCH

knowingly concealed and covered up by means of a scheme or device a material fact, which fact DANIELLE BRANCH knew was material, specifically DANIELLE BRANCH concealed and covered up from California's SWA the fact that, at that time, DANIELLE BRANCH was simultaneously receiving pandemic UI benefits from Michigan's SWA, and this concealment and covering up of a material fact by scheme or device was done in a matter involving a benefit authorized, transmitted, transferred, disbursed, and paid by the United States or of any department or agency thereof in connection with a major disaster declaration under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5170), namely Lost Wages Assistance program benefits that were authorized, paid, and disbursed in connection with the Covid-19 pandemic, an emergency declaration under section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5191).

18 U.S.C. § 1040(a)(1)

**COUNT 48**
**(Fraud in Connection with Emergency Benefits)**

54. Paragraphs 1 through 41 of this Indictment are realleged and incorporated by reference in this Count, as if fully set forth herein.

55. Between on or about August 8, 2020 and on or about September 14, 2020, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

CHRISTOPHER BATES

knowingly concealed and covered up by means of a scheme or device a material fact, which fact BATES knew was material, specifically BATES concealed and covered up from Indiana's SWA the fact that, at that time, BATES was simultaneously receiving pandemic UI benefits from Michigan's SWA, and this concealment and covering up of a material fact by scheme or device was done in a matter involving a benefit authorized, transmitted, transferred, disbursed, and paid by the United States or of any department or agency thereof in connection with a major disaster declaration under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5170), namely Lost Wages Assistance program benefits that were authorized, paid, and disbursed in connection with the Covid-19 pandemic, an emergency declaration under section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5191).

18 U.S.C. § 1040

## PANDEMIC-RELATED LOANS FOR BUSINESS

At all times material to this Indictment:

56. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

57. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees. The CARES Act, which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others, including programs created and/or administered by the SBA.

### Economic Injury Disaster Loan Program

58. An Economic Injury Disaster ("EID") loan is an SBA-administered loan designed to provide assistance to small businesses that suffer substantial economic injury as a result of a declared disaster. An EID loan helps businesses meet necessary financial obligations that could have been met had the disaster not occurred. It provides relief from economic injury that the disaster caused and permits businesses to maintain a reasonable, working capital position during the period that the disaster affected.

59. In March 2020, the CARES Act authorized the SBA to provide EID loans nationwide to eligible small businesses to help alleviate economic injury caused by Covid-19.

60. EID loan funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal. The EID loan application process, which uses certain outside contracts for system support, collects information concerning the business and the

businesses' owner. In order to obtain an EID loan, a business was required to submit an application to the SBA and provide information on its operations, such as the number of employees, gross revenue for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

61. Beginning on July 11, 2020, EID loan applications were submitted directly to the SBA through a cloud-based platform using an online application provided by Rapid Finance, a government contractor, whose servers were located in Iowa.

62. If an EID loan application was approved, the amount of the loan was determined based, in part, on the information provided in the application concerning the number of employees, gross revenue, and cost of goods, as described above. Any funds under an EID loan were issued directly by the SBA. EID loan funds were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EID loan funds were not permitted to be used for the same purpose as the PPP funds.

**Paycheck Protection Program**

63. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

64. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges." In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (i) average monthly payroll expenses; and (ii) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide supporting documentation showing their business expenses. To qualify for eligibility, businesses applying for a PPP loan needed to be in operation as of February 15, 2020.

65. The SBA administered the PPP and had authority over all PPP loans. However, approved lenders, including banks, credit unions, and non-bank lenders, issued the loans. A business's PPP loan application was received and processed, in the first instance, by a participating lender, for assessment of the applicant's eligibility. It was then transmitted to the SBA for review. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which the SBA guaranteed.

66. The following approved lenders participated in the PPP: Harvest Small Business Finance LLC ("Harvest SBF"), Fountainhead Small Business Finance LLC ("Fountainhead SBF"), and Benworth Capital Partners LLC ("Benworth Capital").

67. Womply is a technology service provider that provides an online platform that assists PPP lenders, including Harvest SBF, Fountainhead SBF, and Benworth Capital, in processing PPP loan applications. Womply provided a variety of technology solutions to lenders including the internet platform "Fast Lane," which collected and automated PPP application data and supporting information provided by the applicant, such as identification documents, bank account data, and tax records. Womply used third-party computer servers, located in the states of Virginia and Oregon, to host and store electronic data from Fast Lane.

**COUNT 49**
**(Conspiracy to Commit Wire Fraud—EID Loan Conspiracy)**

68. Paragraphs 1 through 8 and paragraphs 56 through 67 of this Indictment are realleged and incorporated by reference in this Count, as if fully set forth herein.

69. Beginning on or about July 9, 2020, and continuing to in or about August 2020, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

ROSHELL BEATY and
MELVIN CLINTON

knowingly combined, conspired, confederated, and agreed with each other and with other persons known and unknown to the Grand Jury to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, by means of wire communication in interstate commerce.

Object and Purpose of PPP Conspiracy

70. It was the object and purpose of the EID loan conspiracy for BEATY and CLINTON to unjustly enrich themselves by obtaining EID loan proceeds from the SBA under false and fraudulent pretenses, including by making false statements, and converting the EID loan proceeds to their own personal use.

Manner and Means

71. Among the manner and means by which the BEATY and CLINTON carried out the conspiracy were the following:

72. On or about July 9, 2020, one or more coconspirators used the internet to apply online to the Internal Revenue Service for an Employee Identification Number, *i.e.*, "EIN" for the sole proprietorship "Melvin Clinton," using Clinton's Social Security number.

73. On or about July 12, 2020, BEATY used IP address 71.201.191.51 to electronically file with the SBA a false and fraudulent EID loan application in the name and Social Security number of MELVIN CLINTON, as well as the EIN for CLINTON's sole proprietorship. The application contained false and fraudulent representations including:

a. that CLINTON's business was in the "Personal Services" industry, specifically in the category of "Hair and Nail Salon";

b. that CLINTON's business had 10 employees; and

c. that CLINTON's business had gross revenues of $100,000 in the 12 months prior to the pandemic.

74. BEATY and CLINTON used CLINTON's United Federal Credit Union ("UFCU") checking account ending in 0104 as the deposit account for the fraudulent EID loan, thereby causing the SBA to deposit $49,900 into this account of CLINTON's.

75. BEATY and CLINTON converted to their own personal use the EID loan proceeds that were deposited into CLINTON's UFCU account ending in 0104 through a variety of means including withdrawals of cash, electronic transfers of the loan proceeds to other accounts, and a cashier's check in the amount of $34,000 drawn on CLINTON's account ending in 0104.

76. On or about August 1, 2020, BEATY and CLINTON used the fraudulently obtained EID loan proceeds to purchase a 2017 Jaguar F-Pace SUV.

18 U.S.C. § 1349
18 U.S.C. § 1343

**COUNT 50**
**(Wire Fraud—EID Loan Scheme to Defraud)**

77. Paragraphs 1 through 8 and paragraphs 56 through 75 of this Indictment are realleged and incorporated by reference in this Count, as if fully set forth herein.

78. Between on or about July 9, 2020 and on or about August 1, 2020, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

ROSHELL BEATY and
MELVLIN CLINTON,

aiding and abetting each other, knowingly devised a scheme and artifice to defraud and to obtain money, namely an EID loan from the SBA, by means of false and fraudulent pretenses, representations, and promises.

**The Wires**

79. For the purpose of executing the scheme and artifice to defraud, BEATY and CLINTON, aiding and abetting each other, transmitted and caused to be transmitted by means of wire communication in interstate commerce the writings, signs, and signals set forth in Column B, on the date listed in A.

| A<br>Date | B<br>Transmission |
|---|---|
| 7/13/2020 | Electronic transmission of false and fraudulent application for EID loan in the name and PII of MELVIN CLINTON, with electronic "Docusign" signature of CLINTON's name, from IP address 71.201.191.51 in Benton Harbor, Michigan, to Rapid Finance computer servers in Iowa |

18 U.S.C. § 1343
18 U.S.C. § 2

**COUNT 51**
**(Conspiracy to Commit Wire Fraud—PPP Loan Conspiracy)**

80. Paragraphs 1 through 8 and 56 through 67 of this Indictment are realleged and incorporated by reference in this Count, as if fully set forth herein.

81. Beginning in or about March 2021 and continuing to in or about May 2021, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere,

ROSHELL BEATY,
MELVIN CLINTON,
DANIELLE BRANCH,
CHRISTOPHER BATES, and
BRIANNA RIMPSON

knowingly combined, conspired, confederated, and agreed with each other and with other persons, known and unknown to the Grand Jury, to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, by means of wire communication in interstate commerce.

Object and Purpose of PPP Loan Conspiracy

82. The object of the PPP conspiracy was for BEATY, CLINTON, DANIELLE BRANCH, BATES, and RIMPSON, and others known and unknown to the Grand Jury, to unjustly enrich themselves by obtaining PPP loan proceeds to which they were not entitled under false and fraudulent pretenses, including by making false statements, and converting the PPP loan proceeds to their own personal use.

Manner and Means of the PPP Loan Conspiracy

83. Among the manner and means by which the coconspirators carried out the PPP loan conspiracy were the following:

84. BEATY electronically submitted false and fraudulent applications for PPP loans in the names and PII of CLINTON, DANIELLE BRANCH, BATES, and RIMPSON, as well as in

the names and PII of unindicted coconspirators, providing information that the coconspirators knew to be false that was material including false statements that the applicants were sole proprietors or independent contractors who were eligible for PPP loans, and false statements about gross business income for each applicant.

85. One or more coconspirators, including BEATY, prepared false and fraudulent IRS tax forms to support the purported incomes stated in the false and fraudulent PPP loan applications.

86. One or more coconspirators, including BEATY, electronically submitted fraudulent PPP loan applications and supporting documentation, namely the false and fraudulent IRS tax forms, to PPP lenders via wire communications in interstate commerce using the online PPP web platform of the Womply technology company.

87. BEATY electronically submitted false and fraudulent applications for PPP loans in the names and PII of the following third parties, on the approximate dates listed below, resulting in the payment of PPP loans through the identified lenders, for the amounts listed below.

| Loan Recipient | Application Date | Lender | Loan Amount |
|---|---|---|---|
| A.A.C. | 3/29/21 | Fountainhead SBF | $20,833 |
| A.A.C. | 5/23/21 | BSD Capital, dba Lendistry | $20,833 |
| A.D.C. | 4/9/21 | Harvest SBF | $18,562 |
| K.F. | 4/27/21 | n/a | n/a |
| L.J. | 4/26/21 | n/a | n/a |
| L.J. | 3/30/21 | Harvest SBF | $19,354 |
| A.L. | 4/23/21 | n/a | n/a |
| J.L. | 3/30/21 | Harvest SBF | $19,354 |
| K.L.B. | 4/12/21 | n/a | n/a |
| D.P. | 3/27/21 | n/a | n/a |
| K.R. | 4/26/21 | Harvest SBF | $19,770 |
| K.R. | 5/3/21 | Fountainhead SBF | $19,770 |
| K.T. | 4/23/21 | Benworth Capital | $15,208 |
| D.W. | 4/9/21 | n/a | n/a |
| N.Y. | 4/2/21 | n/a | n/a |
| S.Y. | 4/12/21 | Benworth Capital or Harvest SBF | $19,979 |

88. On the approximate dates listed below, one or more coconspirators, including BEATY, used IP address 71.201.191.51 to file with Womply applications for PPP loans in the

names and PII of the following defendants, which contained false statements about the defendants' purported businesses and purported gross business profits, resulting in the payment of PPP loans through the identified lenders, for the amounts listed below.

| Defendant | Application Date | Purported Business | Purported Gross Business Profits by Year | Lender | Loan Amount |
|---|---|---|---|---|---|
| MELVIN CLINTON | 4/17/2021 | Independent Contractor | $77,000 gross profits (2019) | Benworth Capital | $16,041 |
| DANIELLE BRANCH | 4/9/2021 | Sole Proprietor | $59,000 gross profits (2019) | Harvest SBF | $12,291 |
| CHRISTOPHER BATES | 4/12/2021 | Sole Proprietor | $97,270 gross profits (2020) | Fountainhead SBF | $20,264 |
| BRIANNA RIMPSON | 4/9/2021 | Sole Proprietor | $75,000 gross profits (2020) | Fountainhead SBF | $15,625 |

89. Coconspirator BATES applied for a second PPP loan on or about May 23, 2021, which contained materially false and fraudulent statements respecting the nature of BATES's purported business and its purported gross profits, resulting in the funding to BATES of a second PPP loan, by Harvest Small Business Finance, dba Lendistry, in the amount of $20,264.

90. To receive proceeds of the fraudulently obtained PPP loans, the coconspirators used checking accounts belonging to and under the control of CLINTON, DANIELLE BRANCH, BATES, and RIMPSON, as well as unindicted coconspirators, as the deposit accounts for PPP loans, thereby causing the lenders to deposit PPP loan proceeds into these accounts.

91. CLINTON, DANIELLE BRANCH, BATES, and RIMPSON converted to their own personal use the PPP loan proceeds that were deposited into their respective accounts.

92. One or more coconspirators, including DANIELLE BRANCH, BATES, and RIMPSON, applied to the SBA for forgiveness of their PPP loans by submitting applications containing materially false and fraudulent statements, thereby causing the SBA to reimburse their respective lenders in the amount of their PPP loans, with interest.

18 U.S.C. § 1349
18 U.S.C. § 1343

**COUNTS 52 THROUGH 55**
**(Wire Fraud—PPP Loan Scheme to Defraud)**

93. Paragraphs 1 through 8, 56 through 67, and 79 through 91 of this Indictment are realleged and incorporated by reference in these Counts, as if fully set forth herein.

94. On or about the dates listed in Column C, in Berrien County, in the Southern Division of the Western District of Michigan, and elsewhere, the defendants identified in Column B, aiding and abetting each other, having knowingly devised a scheme or artifice to defraud to obtain money by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, transmitted and caused to be transmitted by means of wire communication in interstate commerce the writings, signs, and signals set forth in column D, below, each of which constituted an execution of the fraudulent scheme:

| A<br>Count | B<br>Defendant(s) | C<br>Date | D<br>Transmission |
|---|---|---|---|
| 52 | ROSHELL BEATY<br>MELVIN CLINTON | 4/17/2021 | Electronic transmission of false and fraudulent application for PPP loan in the name of MELVIN CLINTON, from IP address 71.201.191.51 to Womply's computer server in Virginia or Oregon |
| 53 | ROSHELL BEATY<br>DANIELLE BRANCH | 4/9/2021 | Electronic transmission of false and fraudulent application for PPP loan in the name of DANIELLE BRANCH, from IP address 71.201.191.51 to Womply's computer server in Virginia or Oregon |
| 54 | ROSHELL BEATY<br>CHRISTOPHER BATES | 4/12/2021 | Electronic transmission of false and fraudulent application for PPP loan in the name of CHRISTOPHER BATES, from IP address 71.201.191.51 to Womply's computer server in Virginia or Oregon |
| 55 | ROSHELL BEATY<br>BRIANNA RIMPSON | 4/9/2021 | Electronic transmission of false and fraudulent application for PPP loan in the name of BRIANNA RIMPSON, from IP address 71.201.191.51 to Womply's computer server in Virginia or Oregon |

18 U.S.C. § 1343
18 U.S.C. § 2

**FORFEITURE ALLEGATION**
**(Conspiracy to Commit Wire Fraud—Pandemic UI Benefits Fraud)**

The allegations contained in Count 1 (conspiracy to commit wire fraud) are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Pursuant to 18 U.S.C. § 982(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the offense in violation of 18 U.S.C. §§ 1349 and 1343 set forth in Count 1 of this Indictment, the defendants,

ROSHELL BEATY,
MELVIN CLINTON,
DANIELLE BRANCH,
CHRISTOPHER BATES,
BRIANNA RIMPSON, and
CHRISTOPHER BRANCH,

shall forfeit to the United States any property, real or personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to the violation. The property to be forfeited includes, but is not limited to, the following:

A. MONEY JUDGMENT: A sum of money equal to at least $764,194, which represents the proceeds obtained, directly or indirectly, from the offense charged in Count 1 of this Indictment, including $1,905.00 seized from ROSHELL BEATY on April 28, 2021;

B. REAL PROPERTY: 566 E. May St., Benton Harbor, MI 49022, Berrien County, being more fully described as: Lot(s) 4, BLOCK 1, F.M. MILLS EMPIRE ADDITION TO THE CITY OF BENTON HARBOR, according the recorded plat thereof, as recorded in Liber 5 of Plats, Page 29; Parcel No. 11-53-5120-0004-00-1; Titled in the name of Roshell Beaty;

C. PERSONAL PROPERTY: Kayo 125 CC motorcycle number L6JYGJL33MC101803 and Kayo 125 CC motorcycle number L6JYGJL30MC102827, seized from the residence of ROSHELL BEATY on April 28, 2021; and

D. VEHICLE: a 2017 Jaguar F-Pace Sports Utility Vehicle, with VIN SADCM2BVXHA896453;

E. SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendants

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 2461(c)
21 U.S.C. § 853(p)
18 U.S.C. § 1349
18 U.S.C. § 1343

**FORFEITURE ALLEGATION**
**(Conspiracy to Commit Wire Fraud and Wire Fraud—EID Loan Fraud)**

The allegations contained in Count 49 (conspiracy to commit wire fraud) and Count 50 (wire fraud) are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any of the offenses in violation of 18 U.S.C. §§ 1349 and 1343 set forth in Counts 49 and 50 of this Indictment, the defendants,

ROSHELL BEATY and
MELVIN CLINTON,

shall forfeit to the United States any property, real or personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to the violation. The property to be forfeited includes, but is not limited to, the following:

A. MONEY JUDGMENT: A sum of money equal to at least $49,900, which represents the proceeds obtained, directly or indirectly, from the offenses charged in Counts 49 and 50 of this Indictment;

B. VEHICLE: a 2017 Jaguar F-Pace Sports Utility Vehicle, with VIN SADCM2BVXHA896453; and

C. SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendants

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 2461(c)
21 U.S.C. § 853(p)
18 U.S.C. § 1349
18 U.S.C. § 1343

**FORFEITURE ALLEGATION**
**(Conspiracy to Commit Wire Fraud—PPP Loan Fraud)**

The allegations contained in Count 51 (conspiracy to commit wire fraud) are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Pursuant to 18 U.S.C. § 982(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the offense in violation of 18 U.S.C. §§ 1349 and 1343 set forth in Count 51 of this Indictment, the defendants,

ROSHELL BEATY,
MELVIN CLINTON,
DANIELLE BRANCH,
CHRISTOPHER BATES, and
BRIANNA RIMPSON,

shall forfeit to the United States any property, real or personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to the violation. The property to be forfeited includes, but is not limited to, the following:

A. MONEY JUDGMENT: A sum of money equal to at least $218,815, which represents the proceeds obtained, directly or indirectly, from the offense charged in Count 51 of this Indictment;

B. SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendants

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 2461(c)
21 U.S.C. § 853(p)
18 U.S.C. § 1349
18 U.S.C. § 1343

A TRUE BILL

______________________________
GRAND JURY FOREPERSON

MARK A. TOTTEN
United States Attorney

______________________________
KATE ZELL
Assistant United States Attorney